ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

NORTHERN DISTRICT COURT
DISTRICT OF TEXAS
FILED

JUN 17 2020

CLERK, U.S. DISTRICT COURT
By _____
        Deputy

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| vs. | § | No. |
| | § | |
| MARK P. KUPER, D.O. (1) | § | |
| MELISSA KUPER (2) | § | **4-20CR-156-0** |
| TRAVIS COUEY (3) | § | |

## INDICTMENT

The Grand Jury charges:

At all times relevant to this Indictment:

## Introduction

1.      Beginning in or around September 2014 and continuing through in or around December 2017, in the Northern District of Texas, and elsewhere, the defendants, **Mark P. Kuper, D.O.**, **Melissa Kuper,** and **Travis Couey,** created and executed a scheme or pattern of illegal conduct involving fraudulent health care billings that took advantage of a large patient population, including many patients who were underserved, disadvantaged, and elderly.  The defendants, along with others known and unknown to the Grand Jury, each played varying roles and engaged in different aspects of the overall scheme.

2.      Over the course of the conspiracy, the defendants submitted, or caused the submission of, claims for over $10 million to Medicare, Medicaid, and TRICARE for

Indictment—Page 1

services that were not rendered, as detailed more fully below. As part of the conspiracy, the

defendants provided the patients with prescriptions for highly-addictive medications,

including oxycodone, Norco, and other controlled substances, to ensure they would continue

to return to the defendants' practice locations.

3.      Defendant **Mark P. Kuper, D.O.** (hereinafter, **Mark Kuper**), a resident of

Aledo, Texas, was a doctor of osteopathy licensed in Texas. **Mark Kuper** controlled,

owned and operated Mark P. Kuper, D.O., PLLC d/b/a Texas Center for Orthopedic and

Spinal Disorders ("TCOSD"). During the relevant time frame, TCOSD operated two clinic

locations—one in Fort Worth and one in Weatherford. Neither TCOSD clinic location was

registered with the State of Texas as a pain management clinic. **Mark Kuper** was also

registered with the Drug Enforcement Administration ("DEA") to prescribe controlled

substances, Schedules II through V, under DEA registration number BK8524414.

4.      Defendant **Melissa Kuper** was married to **Mark Kuper**. **Melissa Kuper** had

no medical licenses and was not a licensed health care provider. **Melissa Kuper** worked at

both TCOSD locations purportedly in a management role at various times throughout the

relevant time period, including in 2016 and 2017.

5.      Defendant **Travis Couey** (hereinafter **Couey**) was a licensed physical

therapist, who certified patients for physical therapy services at both TCOSD locations.

**Couey** helped to create and maintain false medical records, including "visit notes," detailing

services that he never rendered to Medicare, Texas Medicaid, and TRICARE beneficiaries.

6.     At all times relevant to this Indictment, the Medicare Program ("Medicare") was a federal health care program providing benefits to persons who were over the age of 65 or disabled.  Medicare was funded by federal tax dollars.  Medicare provided coverage and payment for items and services that were reasonable and medically necessary to diagnose or treat an illness or injury or to improve a malformed body member.

7.     The Texas Medicaid Program ("Medicaid") was a state program jointly funded by the State of Texas and the federal government that provided medical and health-related services to certain individuals and families with low incomes and limited financial resources, including pregnant women, children, and individuals who were blind or disabled and whose income and other financial and economic resources were insufficient to afford the cost of necessary medical services.  Medicaid covered the costs of a range of medical services and products.

8.     TRICARE was a health care program of the United States Department of Defense ("DoD") Military Health System that provided coverage for DoD beneficiaries worldwide, including active duty service members, National Guard and Reserve members, retirees, their dependents, and survivors.  The Defense Health Agency ("DHA"), an agency of the DoD, was the military entity responsible for overseeing and administering the TRICARE program.

9.     Medicare, Medicaid, and TRICARE each covered the cost of a range of medical services that were reasonable and necessary, such as physician office visits and

certain outpatient services, including physical therapy and psychotherapy, when the services were provided by qualified professionals in specified settings and under specified conditions.

10.     In order to receive Medicare, Medicaid, and TRICARE funds, enrolled providers, together with their authorized agents, employees, and contractors, agreed to abide by the procedures, rules, and regulations of each program.  A participating physician or provider periodically submitted an application for enrollment to these programs and agreed to comply with all of their applicable rules and regulations.  These procedures, rules, and regulations required enrolled providers to, among other things, maintain complete and accurate patient medical records reflecting the medical assessment and diagnoses of their patients, as well as records documenting actual treatment of the patients to whom services were provided and for whom claims for payment were submitted by the physician.

11.     Medicare, Medicaid, and TRICARE were each a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

12.     **Mark Kuper** was enrolled as a participating provider for Medicare, Medicaid, and TRICARE.

## COUNT 1
### Conspiracy to Commit Health Care Fraud
### (Violation of 18 U.S.C. § 1349 (18 U.S.C. § 1347))

13.     Paragraphs 1 through 12 of the Introduction section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

14.     From in or around September 2014 through in or around December 2017, the exact dates being unknown to the Grand Jury, in the Fort Worth Division of the Northern District of Texas, and elsewhere, defendants **Mark Kuper, Melissa Kuper,** and **Travis Couey** did knowingly and willfully combine, conspire, confederate and agree with each other, and with others, known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1347, that is, to execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, Medicaid, and TRICARE, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services.

**Manner and Means of the Conspiracy and Scheme and Artifice to Defraud**

15.     Defendants **Mark Kuper, Melissa Kuper, Travis Couey,** and their co-conspirators sought to accomplish the purpose of the conspiracy and scheme and artifice to defraud by the following manner and means.

16.     It was part of this conspiracy and joint scheme and artifice to defraud

Indictment—Page 5

Medicare, Medicaid, and TRICARE that defendants **Mark Kuper, Melissa Kuper, Travis Couey**, and their co-conspirators devised and executed a scheme to take advantage of TCOSD's patients, including many patients who were underserved, disadvantaged, and elderly, by requiring them to attend appointments for medical services.  Often times patients were required to attend these appointments to receive prescriptions for controlled substances.  These appointments included office visits and outpatient physical therapy and psychotherapy services.  Although the patients were physically present at the clinics, these services were not actually rendered, as detailed more fully below.

17.     As a further part of this conspiracy and joint scheme and artifice to defraud, the false claims submitted to Medicare, Medicaid, and TRICARE included claims representing that **Couey** had evaluated patients for physical therapy and created individualized physical therapy plans of care, when in reality, **Couey** simply used a boilerplate template that **Mark Kuper** created.  After fraudulently assessing patients for physical therapy, the defendants falsely billed for one-on-one physical therapy sessions purportedly rendered by **Couey** or **Mark Kuper**, when the patients actually met in groups with an athletic trainer, or other unqualified professional, for short periods of non-reimbursable activities.

18.     **Mark Kuper** fraudulently submitted these services performed by unlicensed and unqualified staff under non-existent or minimal supervision from **Mark Kuper** and **Couey** to Medicare, Medicaid, and TRICARE for physical therapy services that were not

Indictment—Page 6

rendered. Moreover, the claims submitted for these services indicated the services were performed by **Mark Kuper** or **Couey**, or under their supervision, when **Mark Kuper** or **Couey** had neither performed nor supervised those services.

19.    As a further part of this conspiracy and joint scheme and artifice to defraud, defendants and others created an assembly line of patients to be seen for psychotherapy services. **Mark Kuper** submitted claims for psychotherapy services as though patients underwent psychotherapy sessions for 60 minutes when in fact patients often saw an individual other than **Mark Kuper** for no more than 15 to 20 minutes. Many of the individuals who saw patients for these psychotherapy appointments were not qualified to perform psychotherapy. As a further part of this scheme, **Mark Kuper** billed for these services as though **Mark Kuper** directly performed or supervised the services, when in fact **Mark Kuper** did neither of these things—and in many instances, **Mark Kuper** was not even physically present in the clinic at the time of patient visits. **Mark Kuper's** professional training and background was focused on orthopedics, with no specialized training in psychotherapy.

20.    These claims for physical therapy and psychotherapy were false because (1) they were not performed, (2) the individuals present were unlicensed and unqualified, and (3) they were not performed for the time duration stated on the claims.

21.    For example, **Mark Kuper**, **Melissa Kuper**, **Couey**, and other co-conspirators, known and unknown to the Grand Jury, falsified medical records and caused

Indictment—Page 7

the falsification of medical records related to the following individuals to state that the individuals had received the following health care services at locations in the Northern District of Texas on the following dates, even though they did not receive such services as billed:

| Ex. | Office Visit Date | Patient Initials | CPT Code | Service Description | Health Care Benefit Program | Amount Billed |
|-----|-------------------|------------------|----------|---------------------|-----------------------------|---------------|
| 1 | 3/30/2016 | M.S. | 97110 | Therapeutic exercise to develop strength, endurance, range of motion, and flexibility, each 15 minutes | Medicare/ Medicaid | $194.28 |
| 2 | 3/30/2016 | M.S. | 97140 | Manual (physical) therapy techniques to 1 or more regions, each 15 minutes | Medicare/ Medicaid | $89.88 |
| 3 | 3/30/2016 | L.S. | 90838 | Psychotherapy, 60 minutes | Medicare | $329.01 |
| 4 | 4/7/2016 | L.S. | 97110 | Therapeutic exercise to develop strength, endurance, range of motion, and flexibility, each 15 minutes | Medicare | $194.28 |
| 5 | 4/7/2016 | L.S. | 97140 | Manual (physical) therapy techniques to 1 or more regions, each 15 minutes | Medicare | $89.88 |
| 6 | 4/19/2016 | A.R. | 90838 | Psychotherapy, 60 minutes | Medicare | $329.01 |

22.     As a further part of this conspiracy and joint scheme and artifice to defraud, **Mark Kuper** would submit claims for additional evaluation and management (E/M) patient

visits with the outpatient psychotherapy visits.  Oftentimes these E/M patient visits did not occur.  For instance, for the services referenced above in paragraph 21 **Mark Kuper** submitted a claim representing that he performed a 25-minute E/M patient visit (CPT Code 99214) with L.S. (Ex. 3) and A.R. (Ex. 6) on the same dates as the psychotherapy visits when in fact no such E/M visit occurred.

23.     As a further part of this conspiracy and joint scheme and artifice to defraud, **Mark Kuper** submitted billing claims in which he purported to have personally performed services for a duration of time that exceeded the time that any TCOSD employee spent with a patient.  **Mark Kuper** often billed as though he personally performed more than 24 hours' worth of medical care in a single day.  Several times **Mark Kuper** billed as though he had performed over 100 hours' worth of medical services in a single 24-hour day.  On a least one occasion, **Mark Kuper** billed as though he performed approximately 140 hours' worth of medical services in a single 24-hour day.

24.     As a further part of this conspiracy and joint scheme and artifice to defraud, **Mark Kuper** often billed for procedures when he was not physical present at a clinic location.  **Mark Kuper**, **Melissa Kuper**, **Couey**, and others knew that **Mark Kuper** was not present at a clinic location.  In or around December 2016, **Mark Kuper** began to lessen his physical presence at the TCOSD clinic locations.

25.     Beginning in or around April 2016, as a further part of this conspiracy and joint scheme and artifice to defraud, **Melissa Kuper** increasingly began to ensure that

Indictment—Page 9

patients underwent the superficial services in order to get their prescriptions for pain medications, including Schedule II controlled substances.

26.     As a further part of this conspiracy and joint scheme and artifice to defraud, **Melissa Kuper** dispensed prescriptions for pain medications, including Schedule II controlled substances, as if she were a licensed medical provider.  **Mark Kuper** provided **Melissa Kuper** access to and possession of the secure device needed to electronically sign or authorize prescriptions for controlled substances.

27.     As a further part of this conspiracy and joint scheme and artifice to defraud, and in an attempt to conceal and obstruct an investigation into their fraudulent billing, **Mark Kuper** and **Melissa Kuper** attempted to destroy medical records and billing records that evidenced their scheme in an outdoor fireplace of their residence.  The billing records were found on or around October 26, 2017, when firefighters were responding to a fire that destroyed the residence of **Mark Kuper** and **Melissa Kuper**.  On that day, firefighters found charred and burned medical and billing records, including superbills and office visit summary bills, in an outdoor fireplace.  These actions were taken after **Mark Kuper** had received at least one subpoena from U.S. Department of Health and Human Services— Office of Inspector General, and a request for records from the Texas Medicaid Fraud Control Unit.

All in violation of Title 18, United States Code, Section 1349 (section 1347).

## Counts Two through Seven
## Health Care Fraud, Aiding and Abetting
## (18 U.S.C. §§ 1347, 2)

28.     Paragraphs 1 through 27 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

29.     Beginning in or about September 2014 and continuing to in or about December 2017, in the Northern District of Texas and elsewhere, defendant **Mark Kuper** did knowingly and willfully execute, and attempt to execute, the above-described scheme and artifice to defraud a health care benefit program, that is Medicare, Medicaid, and TRICARE, health care benefit programs as defined in 18 U.S.C. § 24(b), and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services, by submitting and causing the submission of the following false claims, each such claim representing a separate execution of the scheme and artifice:

| Count | Office Visit Date | Patient Initials | CPT Code | Service Description | Health Care Benefit Program | Amount Billed |
|-------|-------------------|------------------|----------|---------------------|------------------------------|---------------|
| 2 | 7/10/2015 | M.C. | 90838 | Psychotherapy, 60 minutes | TRICARE | $250.00 |
| 3 | 4/12/2016 | P.S. | 90838 | Psychotherapy, 60 minutes | Medicaid/ Amerigroup | $329.01 |

| Count | Office Visit Date | Patient Initials | CPT Code | Service Description | Health Care Benefit Program | Amount Billed |
|---|---|---|---|---|---|---|
| 4 | 4/28/2016 | D.M. | 97110 | Therapeutic exercise to develop strength, endurance, range of motion, and flexibility, each 15 minutes | TRICARE/ Medicare | $194.28 |
| 5 | 4/28/2016 | D.M. | 97140 | Manual (physical) therapy techniques to 1 or more regions, each 15 minutes | TRICARE/ Medicare | $89.88 |
| 6 | 12/9/2016 | R.B. | 97110 | Therapeutic exercise to develop strength, endurance, range of motion, and flexibility, each 15 minutes | Medicare/ Medicaid | $194.28 |
| 7 | 12/9/2016 | R.B. | 97140 | Manual (physical) therapy techniques to 1 or more regions, each 15 minutes | Medicare/ Medicaid | $89.88 |

All in violation of Title 18, United States Code, Section 1347.

## Count Eight
### Unlawful Distribution of Controlled Substances, Aiding and Abetting
### (21 U.S.C. § 841(a)(1), 18 U.S.C. § 2)

30.     On or about November 1, 2016, in the Northern District of Texas, defendant

**Melissa Kuper**, not a licensed health care provider and therefore acting and intending to act

outside the usual course of professional practice and without a legitimate medical purpose,

did knowingly, intentionally, and unlawfully distribute 90 pills of Norco, then a Schedule II

controlled substance containing hydrocodone, to patient M.S. in violation of 21 U.S.C. §

841(a)(1).

Indictment—Page 13

## Notice of Criminal Forfeiture
### (18 U.S.C. § 982(a)(7))

Pursuant to 18 U.S.C. § 982(a)(7), upon conviction for violating 18 U.S.C. §§ 1347 and 1349, the defendants **Mark Kuper**, **Melissa Kuper** and **Travis Couey** shall forfeit to the United States of America property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the conspiracy andscheme to defraud. The property to be forfeited includes, but is not limited to:

- A money judgment equal to the value of any property not available for forfeiture as a result of any act or omission of the defendant(s) for one or more of the reasons listed in 21 U.S.C. § 853(p).

- Substitute property as allowed by 18 U.S.C. § 982(b) and 21 U.S.C. § 853(p).

A TRUE BILL

_____
FOREPERSON

ERIN NEALY COX
UNITED STATES ATTORNEY

_____
STEPHEN P. FAHEY
Assistant United States Attorney
Texas State Bar No. 24101249
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214.659.8600
Fax: 214.659.8803

_____
LINDSEY BERAN
Assistant United States Attorney
Texas State Bar No. 24051767
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214.659.8600
Fax: 214.659.8803

Indictment—Page 15

17

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

THE UNITED STATES OF AMERICA

v.

MARK P. KUPER, D.O. (01)
MELISSA KUPER (02)
TRAVIS COUEY (03)

INDICTMENT

18 U.S.C. § 1349 (18 U.S.C. § 1347)
Conspiracy to Commit Healthcare Fraud
(Count 1)

18 U.S.C. §§ 1347, 2
Healthcare Fraud, Aid and Abetting
(Counts 2 and 7)

21 U.S.C. § 841(a)(1), 18 U.S.C. § 2
Unlawful Distribution of Controlled Substances, Aiding and Abetting
(Count 8)

Forfeiture Notice
18 U.S.C. § 982(a)(7)

A true bill rendered

FORT WORTH                                                                    FOREPERSON

Filed in open court this 17th day of June, 2020.

**Warrant to be Issued**

UNITED STATES MAGISTRATE JUDGE
No Criminal Matter Pending